IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| GADV, INC., d/b/a L&L GENERAL CONTRACTORS, | § § § | |
| Plaintiff, | § § | Civil Action No. 1:11-CV-187 |
| v. | § § | JUDGE RON CLARK |
| BEAUMONT INDEPENDENT SCHOOL DISTRICT *et al*, | § § § § | |
| Defendants. | § | |

## MEMORANDUM ORDER STATING REASONS FOR GRANTING PERMANENT INJUNCTION

Plaintiff GADV, Inc., d/b/a L&L General Contractors, requested injunctive relief under Texas Education Code §44.032(f), on the grounds that Defendant Beaumont Independent School District ("BISD") violated Texas Education Code §§ 44.035(a) and/or 44.039(a), (e), (f) in awarding a contract for construction services through the competitive sealed proposal process. After a hearing, the court found that BISD had failed to evaluate and rank the proposals, and had failed to select the contractor that offered the best value based on the published selection criteria and on its ranking evaluation, all as statutorily required. The court then granted Plaintiff's request for a permanent injunction. This Order states the reasons for granting the injunction.[1]

## I. BACKGROUND

Ensuring that taxpayers receive value for contracts awarded by governmental entities and avoiding corrupt practices is a problem of long standing. A lowest responsible bidder requirement

---

[1]The court outlined its findings and reasons for granting the permanent injunction on the record at the May 23, 2011 hearing. In the event of any conflict, this written Order controls.

1

was placed in the 1876 Texas Constitution in response to the granting of government contracts for fuel and printing "at exorbitant prices as special favors to friends or relatives of those wielding governmental powers." Tex. Const. art. XVI, § 21 interp. commentary (West 1993).[2] The governing statutes have evolved from fairly simple "lowest bidder" requirements to laws that allow a local governing body to consider a number of factors.

Under current law, a Texas school district contemplating the award of a construction contract may choose the method that best suits its needs and the project from several alternatives. Tex. Educ. Code Ann. §§ 44.031-44.044 (West 2006 & West Supp. 2010). These sections establish procedures that must be followed for each method. The Texas Legislature has provided that officials who fail to comply with the procedure are subject to criminal penalties and removal. *Id.* at § 44.032(b)-(e). Additionally, the Legislature has provided that "[a] court may enjoin performance of a contract made in violation of this subchapter." *Id*. at § 44.032(f).

## II. STANDARD FOR GRANTING PERMANENT INJUNCTION

This case is properly before the court on the basis of federal question jurisdiction. The request for injunctive relief falls under the court's supplemental jurisdiction, as the requested relief is authorized solely by a state statute. Under Texas law, where injunctive relief is statutorily authorized, the doctrine of balancing of equities has no application. *State of Tex. v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 805 (Tex. 1979). "When it is determined that the statute is being violated, it is within the province of the district court to restrain it." *Id*.

---

[2]Bidding procedures to protect the public treasury from corruption or incompetence have been adopted since colonial times and were part of the reformist response to local officials such as Boss Tweed, of Tammany Hall fame. *See* Frank Anechiarico & James B. Jacobs, Purging Corruption from Public Contracting, 40 N.Y.L. Sch. L. Rev. 143, 145-46 (1995).

Competitive bid requirements are intended "to benefit and protect the citizens of the State," not to protect other bidders. *See Dir. of Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264, 270 (Tex.1980). In *Daniels Building & Construction, Inc. v. Silsbee Independent School District*, 990 S.W.2d 947, 949-50 (Tex. App. — Beaumont 1999, no pet.), the appellate court found that the trial court had erred by failing to enjoin a construction contract awarded by a school district that did not comply with the notice requirements of Texas Education Code § 44.031(g). The court rejected the argument that Plaintiff, a competing contractor, could not show irreparable harm because it had actual notice. *Id.* at 949. The harm resulting from the disregard of legislatively mandated requirements was to the public, and not merely the contractor.[3]

However, specific authority to ensure compliance with a state statute does not require a federal judge exercising equitable power to mechanically grant an injunction for every violation of the law. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13, 102 S. Ct. 1798, 1803 (1982). While the test has been expressed in slightly different ways depending on the situation, the party seeking an injunction must show that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) an injunction is in the public interest. In cases between private parties, factor (4) can be phrased as a requirement that the public interest is not disserved. *See, e.g., Winter v. Res. Def. Council, Inc.* 555 U.S. 7, 129 S. Ct. 365, 374 (2008); *eBay, Inc. v. MercExchange LLC*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006).

---

[3]There is also some authority in the Fifth Circuit that, under federal law, a party seeking an injunction for a statutory violation also need show only that the statute was violated. *See, e.g., Donovan v. Brown Equip. & Serv. Tools, Inc.*, 666 F.2d 148, 157 (5th Cir. 1982); *United States v. Quandro Corp.*, 916 F. Supp. 613, 617 (E.D. Tex. 1996).

# III. FINDINGS OF FACT

The court makes the following findings of fact:

1. From among the alternatives provided by the Texas Education Code, BISD decided that the contract for the construction of the West Brook Field House would be awarded by the competitive sealed proposal method, as authorized by Texas Education Code § 44.031(a)(2). Joint Hearing Exs. 1 (Request for Competitive Sealed Proposals), 2 (BISD Legal Notice Re Request for Competitive Sealed Proposals).

2. In compliance with Texas Education Code § 44.039(d), the Request for Competitive Sealed Proposals was prepared and included the selection criteria to be used in selecting the successful offeror. Joint Hearing Ex. 1.

3. While the BISD Board of Trustees could have, under Texas Education Code § 44.0312(a), delegated to a person or committee the authority to evaluate and rank the proposals, it did not do so. Therefore, the authority to evaluate and rank the proposals remained with the Board. *See, e.g.*, Doc. # 14 at 3, 5-6 (BISD's response to Plaintiff's motion for injunctive relief).

4. The Request for Competitive Sealed Proposals was issued on December 7, 2010. Joint Hearing Ex. 1.

5. Eight proposals were submitted. The three-person Evaluation Committee—Robert Mann from BISD, Mark Anthony Rodriguez from Defendant Parson's Commercial Technology Group, Inc., and Robert Tai from StOA Architects— ranked the offerors as follows:

    1. Plaintiff
    2. Turner
    3. N&T Construction
    4. Defendant HRE, Inc.
    5. Bruce's Construction
    6. Triad
    7. Morganti
    8. McInnis Construction.

    Joint Hearing Ex. 12 at BISD 01791, 01793 (January 20, 2011 memorandum from BISD's Chief Business Officer, Robert Zingelmann, to BISD Superintendent Dr. Carrol A. Thomas).

6. In this January 20, 2011 memorandum, the Evaluation Committee recommended to the Board that it "enter into contract negotiations with the number one ranked firm in the evaluation," namely Plaintiff. Joint Hearing Ex. 12 at BISD 01791.

7. Although the above ranking was never changed, the Evaluation Committee subsequently recommended to the Board that it enter into contract negotiations with HRE, which it termed the low-bidder. Joint Hearing Ex. 17 at 1 and 7 of 8 (February 17, 2011 memorandum from Mr. Zingelmann to Dr. Thomas).

8. At the February 17, 2011 Board meeting, the Board voted to enter into contract negotiations with HRE, the offeror ranked fourth by the advisory committee. Joint Hearing Ex. 18, at BISD 0079 (February 17, 2011 BISD Board meeting minutes).

9. The BISD Board of Trustees did not evaluate and rank each proposal in relation to the published criteria as required by Texas Education Code § 44.039(e).

10. The BISD Board of Trustees did not "select the offeror that offers the best value for the district based on the published selection criteria and on its ranking evaluation" as required by Texas Education Code § 44.039(f).

## IV. ANALYSIS

### A. BISD's failure to rank the offers violated Texas law

BISD's position has consistently been that it did not delegate authority to its construction manager at-risk, co-Defendant Parson's Commercial Technology Group Inc., under Texas Education Code § 44.0312(a). Under Section 44.0312(a),

> the district shall provide notice of the delegation and the limits of the delegation in the request for bids . . . .If the district fails to provide that notice, a ranking, selection, or evaluation of bids . . . for construction services other than by the board of trustees in an open public meeting is advisory only.

BISD is correct that its Request for Competitive Bids does not mention Parson's, or any delegation to Parson's.

Texas Education Code § 44.039(a) states that "[i]n selecting a contractor for construction, rehabilitation, alteration, or repair services for a facility through competitive sealed proposals, a school district shall follow the procedures prescribed by this section." One of the requirements of Section 44.039 is set out in subsection (e):

5

> The district shall receive, publicly open, and read aloud the names of the offerors and, if any are required to be stated, all prices stated in each proposal. Within 45 days after the date of opening the proposals, <u>the district shall evaluate and rank each proposal submitted in relation to the published selection criteria.</u>

(emphasis added). BISD failed to comply with the ranking requirement in the second sentence of Section 44.039(e).

This creates a problem for BISD, as the only evidence of bid-ranking in the record is the ranking done by Parson's. At the January 20, 2011 BISD Board of Trustees meeting, part of the agenda packet was Exhibit F-1. *See* Joint Hearing Exs. 12 (Exhibit F-1 to January 20, 2011 agenda); 13 at BISD 0063 (January 20, 2011 BISD Board of Trustees meeting minutes). Exhibit F-1 includes a letter from BISD's Chief Business Officer Robert Zingelmann to BISD Superintendent Dr. Carrol Thomas. In this letter, Mr. Zingelmann states that eight contractors submitted bids for the West Brook High School field house project. The bids were evaluated by three individuals—including one from BISD and one from Parson's—and their recommendation was that "the District enter into contract negotiations with the number one ranked firm in the evaluation L&L General Contractors [Plaintiff] in the amount of $2,033,718.64." Joint Hearing Ex. 12, at BISD 01791. Also included with this letter was a ranking of the eight bids, by total points awarded. Plaintiff was ranked first, while Defendant HRE, Inc. was ranked fourth. *Id.* at BISD 01793.

The discussion of whether to approve the recommendation of Plaintiff as contractor was tabled at the January 20 meeting. Joint Hearing Ex. 13, at BISD 0063. It was briefly raised again at a January 22, 2011 BISD Board of Trustees meeting, and again tabled until the February 17, 2011 meeting. Joint Hearing Ex. 15, at BISD 0068-69 (January 22, 2011 BISD Board of Trustees meeting minutes).

At the February 17, 2011 BISD Board of Trustees meeting, part of the agenda packet was Exhibit J. *See* Joint Hearing Exs. 16 at BISD 0071 (February 17, 2011 agenda), 17 (Exhibit J to February 17, 2011 agenda), 18 (February 17, 2011 BISD Board of Trustees meeting minutes). Exhibit J includes a new letter from Mr. Zingelmann to Dr. Thomas, now stating that "it is the recommendation of Parson's to recommend acceptance of the low bidder (HRE) to perform the stated work for the West Brook High School Field House." Joint Hearing Ex. 17, at 1 of 8. The letter from Mr Zingelmann contains no new ranking, and actually includes the same ranking done by the Evaluation Committee in January 2011 which ranked Plaintiff first and HRE fourth. *Id.* at 7 of 8. By its votes first approving Exhibit J, then approving entering into contract negotiations with HRE, the Board could actually be said to have approved the only ranking accompanying Exhibit J—the same ranking previously included as Exhibit F-1 to the January 20, 2011 meeting agenda, which ranked Plaintiff first and HRE fourth. *Id.* at 7 of 8.

Because BISD did not comply with Section 44.039(e) and rank the bids, it necessarily did not comply with Section 44.039(f), which states in relevant part that "The district shall select the offeror that offers the best value for the district based on the published selection criteria <u>and on its ranking evaluation</u>. The district shall first attempt to negotiate with the selected offeror a contract." (emphasis added).

BISD argues that ranking is unnecessary, and that by voting to select HRE it selected the offeror that offered the best value to the district. BISD asserts that the Board has the discretion to make such a choice. However, this ignores the plain wording of Texas Education Code § 44.039(e), which requires the Board to "evaluate and rank each proposal submitted in relation to the published

7

criteria." This requirement enhances transparency in the bid process, and allows the public to compare the Board's choice against the benchmark—the published criteria.

Likewise, Texas Education Code § 44.039(f) makes it clear that the Board is to negotiate with the offerors "in the order of selection ranking," which cannot be done without a ranking. Even granting the broadest discretion to the governing body, the selection of only first place can, by no stretch of the imagination, be considered a ranking of the other seven offerors.

**B.     The four factor test weighs in favor of an injunction**

   1.     *Irreparable harm and lack of adequate remedies—factors (1) and (2)*

Plaintiff submitted a proposal and was ranked first by the Evaluation Committee. The choice of HRE by a Board of Trustees that failed to comply with statutory requirements resulted in a loss to Plaintiff. Texas law allows Plaintiff no suit for damages or other remedy against the Board, or against HRE, for this statutory violation.

While a prosecuting attorney or a grand jury can bring criminal charges against officers or employees who attempt to avoid the requirements for competitive sealed proposals, that offers little comfort to Plaintiff. The Texas legislature has provided that the only civil remedy for a contract made in violation of Texas Education Code § 44.039 is enjoining performance of the contract. *Id.* at § 44.032(f). The only remedy available to Plaintiff is an injunction, which would require the Board to reopen the proposal process and give Plaintiff at least a chance at a contract, should Plaintiff opt to submit a proposal. These factors weigh in favor of an injunction.

   2.     *Balance of hardships to the parties—factor (3)*

The recommendation of the Evaluation Committee, which ranked Plaintiff first, was presented to the Board at every meeting at which the issue was on the agenda (i.e., the January 20,

January 22, and February 17, 2011 meetings). While only advisory, this was the *only* ranking ever made and indicates that, based on its proposal, Plaintiff was in a good position to receive the contract. If the injunction is not granted, Plaintiff forever loses its chance at the contract.

BISD may suffer some hardship by the delay caused by the injunction. However, the old field house has been torn down. Temporary buildings are already in place and are being used. BISD may also be able to take advantage of the work that has already been done—for example, the old field house has now been destroyed, and BISD will not need to pay the successful bidder to destroy it again. The delay is entirely a product of BISD's failure to follow the statutory requirements in awarding construction contracts.

There is some hardship to HRE, which has already incurred financial obligations in connection with this contract. However, HRE may have a remedy against BISD in quantum meruit for the work already performed. *See, e.g., Crosby v. Marquess*, 226 S.W.2d 461, 464 (Tex. Civ. App.— Beaumont 1950, writ ref'd n.r.e.). Further, it is the duty of a successful bidder to ensure that all statutory requirements are met before the bidder commences work. *Richmond Printing v. Port of Houston Auth.*, 996 S.W.2d 220, 224-25 (Tex. App. — Houston [14th Dist.] 1999, no pet.). HRE may experience some hardship, but it was avoidable hardship for which HRE may still receive some recompense. On balance, the hardship to Plaintiff outweighs the hardship to BISD and HRE.

Even if reasonable minds could differ over the exact balance of hardships between Plaintiff, HRE, and BISD, there is little doubt that allowing performance of a contract awarded in violation of statutory requirements imposes hardship on the public generally by subverting the very purpose of these requirements: "to stimulate competition, prevent favoritism and secure the best work and materials at the lowest practicable price, for the best interests and benefit of the taxpayers and

property owners." *Tex. Highway Comm'n v. Tex. Ass'n of Steel Imps., Inc.*, 372 S.W.2d 525, 527 (Tex. 1963) (quoting *Sterrett v. Bell*, 240 S.W.2d 516, 520 (Tex. Civ. App. — Dallas 1951, no writ)).

      3.     *An injunction will serve the public interest—factor (4)*

As discussed above, the Texas Legislature, like other state and local legislative bodies and the federal government, has repeatedly determined that the public interest is served by competitive bid requirements. To that end, the Texas legislature has required school districts, as well as other local governmental entities, to follow specific procedures when awarding construction contracts. Permitting school districts to select the requirements they will follow undermines the purposes of competitive bid statutes, impedes an open and proper bid process, and is an invitation to the evils of favoritism and corruption that the legislature sought to prevent.

At the hearing it was stated that the grant of an injunction may have an impact on those school districts throughout the state that are failing to rank proposals or perhaps neglecting other requirements of the Texas Education Code. If correct, this assertion strongly supports the court's conclusion that an injunction will serve the public interest. State legislators did not enact competitive bid statutes with the intent or expectation that they would become a menu from which local governing bodies would pick and choose as fancy dictates. The public interest will be strongly served by the injunction.

## IV. CONCLUSION

For the reasons stated on the record at the May 23, 2011 hearing and in this Order, the court finds that BISD failed to comply with Texas Education Code §§ 44.039(e), (f). Consideration of the traditional four factor test favors granting a permanent injunction. As set forth on the record at the

May 23 hearing and in the court's subsequent Permanent Injunction Order, BISD and HRE are permanently enjoined and restrained from any and all performance under the February 25, 2011 construction contract pertaining to the West Brook High School field house renovation project.

So **ORDERED** and **SIGNED** this **7** day of **June, 2011.**

_____
Ron Clark, United States District Judge